## SMITH v KROEGER

Ohio Appeals, 2nd District,
Montgomery Co.

No. 1644. Decided March 3, 1941.

Shaman, Winer & Shulman, Dayton, for plaintiff-appellee.

Phil R. Becker, Dayton, representing Supt. of Bldg. & Loan Assns.

McConnaughey, Demann & McConnaughey, Dayton, for Miami Savings.

John W. Dale and A. K. Meck, Dayton, Counsel amici curiae.

Lindley G. Long, Dayton, representing himself.

## OPINION

By BARNES, J.:

The above entitled cause is now being determined as an error proceeding by reason of defendants' appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

Plaintiff's original action was commenced on August 12, 1935, through the filing of a petition in the Common Pleas Court of Montgomery County, on behalf of himself and all others similarly situated, seeking to have his claims and all others having similar interest declared to be a credit claim against The Miami Savings and Loan Company instead of a stock claim as carried on the books of such association.

The petition was attacked by motions and demurrer, all of which were overruled. Later answers were filed traversing the question of a class suit and also denying the relief sought by the plaintiff and all others whom he claims to represent. During the five and one-half years that the cause has been in various courts, numerous substitutions of defendants have been made as well as frequent changes in counsel representing them.

This situation was occasioned by change in administrations of attorneys general and newly appointed superintendents of building and loan associations.

In May, 1937, the cause came on to be heard before the Honorable H. W. Jewell of Delaware, Ohio, sitting as Common Pleas Judge in Montgom-

ery County, Ohio, under special assignment.

At the suggestion of the court and by stipulation of counsel, it was agreed that the cause should proceed on the issues raised as it affected the plaintiff, Clement D. Smith, reserving the question of the issue of class suit to future consideration, with the stipulated agreement that such a procedure should not prejudice any of the remaining questions.

Following the hearing the trial court made a finding for the plaintiff and all persons described in the petition similarly situated, and against The Miami Savings and Loan Company, declaring that plaintiff, Smith, and all persons similarly situated were creditors, etc.

The defendants gave notice of appeal, whereby the cause was lodged in our court.

The judgment of the Common Pleas Court was modfied in that we found error in the trial court going beyond the provisions of the stipulations and making findings as to "all others similarly situated", but affirming the judgment as it pertained to the plaintiff Smith.

Defendants then made application to the Supreme Court to certify, which was denied.

On December 29, 1936, a Master Commissioner was appointed with instructions and orders to hear and determine all the issues and report his findings of evidence and law. Following the stipulation to hear and determine the single issue as it related to plaintiff Smith, the activities of the Master Commissioner were suspended, but were resumed at a later date following the mandate from the Court of Appeals. Honorable Hugh R. Gilmore, Common Pleas Judge from Preble County, was assigned to hear the cause on the remaining issues.

Following the taking of evidence before the Master Commissioner and his report thereon the trial court determined that the petition properly presented a class suit and included in the journal entry was a list of the other persons having similar claims to plaintiff Smith, together with the amounts. All were designated as having creditor's claims and not stockholder's claims. On November 24, 1939, counsel for plaintiff filed motion for allowance of reasonable counsel fees.

Upon order of the trial court notice of the hearing for the allowance of counsel fees was published in the various newspapers of general circulation in Dayton, Ohio, wherein the time and place was stated for the hearing on the application for allowance of fees. At the time and place specified in the notice the parties appeared, evidence was presented and thereupon the trial court determined that counsel was entitled to fees in the amount of fifteen (15%) per cent of the sum total of all claims allowed by the former order of the court. This finding and order as journalized, in part read as follows:

"And the court further finds that the payment of such fee to Messrs. Shaman, Winer & Shulman should be made by the issuance of a certificate of claim in an amount equal to 15% of the aggregate and total amounts of all claims heretofore allowed by this court, and that the said 15% should be deducted from the claims of each of the parties plaintiff herein."

Under this formula of calculation the total of such certificate would amount to between seventy-

nine and eighty thousand dollars. The cash value of the certificate would be approximately $55,000.00.

Counsel for the superintendent of insurance and separate counsel representing the Miami Savings and Loan Company appeared at the hearing in opposition to the allowance of attorney's fees. A very small number of the interested claimants were present and only two took any part in the hearing. One of the two did no more than express an objection to the allowance of any fee, and the other cross-examined Mr. Shaman. Both the superintendent of insurance and The Miami Savings & Loan Company gave separate notices of appeal on questions of law. The question of the allowance of attorney's fees is the only one presented to us at this time. At this point it is proper to present a brief statement as to the nature and scope of the original action.

On and prior to the 30th day of May, 1930, The Buckeye Building & Loan Association was operating in the city of Dayton; that on said 30th day of May, 1930, by duly authorized action of its officers and stockholders it sold its assets to The Miami Savings & Loan Company. As a part of the consideration for such purchase The Miami Savings & Loan Company "assumed and agreed to pay all outstanding obligations and liabilities of whatsoever kind and description of said The Buckeye Building & Loan Association, including all liability by reason of paid-up stock deposits, running stock deposits", etc.

The Miami continued to carry the paid-up deposits and running stock deposits acquired from the Buckeye as a stock obligation of the Miami. No effort was made to pay off the Buckeye stockholders in cash. In some few instances holders of the Buckeye stock surrendered it and took out new stock in the Miami. On April 18, 1933, the superintendent of building and loan associations of the state of Ohio, with the written approval of the director of commerce, ordered the Miami to proceed to liquidate its business and property, all pursuant to the provisions of §687-21 G C., and on the same day the said superintendent took possession of the business and property of said association. The plaintiff, C. D. Smith, on October 17, 1929, had made a deposit at The Buckeye Building & Loan Association in the sum of $1000.00, for which he received a certificate of paid-up stock. The action of the superintendent in taking over the Miami naturally caused activity among all depositors and claimants in the interests of securing their money. The plaintiff, Dr. Clement D. Smith, on several occasions made demands for the payment of the amount represented through his stock certificate. Payment being refused, he obtained counsel and took the necessary steps through which his present action was filed. So far as we are advised none of the other claimants similarly situated brought any suit seeking to have their stock holdings in the Buckeye decreed to be a credit claim against the Miami. It goes without saying that the effect of the present action, through which the stockholdings of the various individuals in the Buckeye Company were decreed to be credit obligations against the Miami, was very helpful to this class of claimants. Counsel for the defendants-appellants, as well as other attorneys, amici curiae, filed briefs and argued very earnestly and plausibly that the court had no jurisdiction to allow attorney's fees on the basis of a class suit. In addition, counsel filing brief amici curiae (who are really interested parties). urge that the

amount allowed was execessive. One of the briefs in opposition to the allowance of the fees relied principally on the case of **Hagerty, Appellee v. Squire, Superintendent of Banks, 63 Oh Ap, 300.** This was a Cuyahoga County case and was decided September 27, 1939. This case presents a very strong appeal, and but for the fact that it was subsequently reversed by the Supreme Court, it is highly probable that we would have followed it. However, the Supreme Court in its reversal passes upon the identical question involved in the instant case as it relates to a class suit. The decision of the Supreme Court under the title of **Hagerty v. Squire, Supt.,** will be found in **137 Oh St page 207** (Ohio Bar, July 15, 1940). Syllabus No. 2 reads as follows:

"2. Where a number of persons have separate and individual claims and rights of ▮▮▮▮▮ action against the same party, but all such claims arise from a common source and represent a like interest, the whole matter may be litigated in a single action brought by all of the claimants as co-plaintiffs, or in case the parties are numerous making it impracticable to bring them all before the court, by one or more of them suing for himself or themselves and on behalf of the other claimants."

This syllabus does not differ in substance from §11257 GC. We still think that there are causes of action of numerous plaintiffs whicn might qualify under the exact language of the above §11257 GC., but still would not authorize the bringing of a class suit. However, we can arrive at no other conclusion than that the nature of the claims "of all others similarly situated" in the instant case is so similar to the "all other claimants" in the Hagerty case as to remove all doubt that the present action was properly brought as a class suit.

There still remains the question as to the amount of the allowance. It is unquestionably large, but the amount involved was likewise large. The amount to be charged against each claimant will not be large; in fact it will be considerably less than any single claimant would have been required to pay had he instituted an independent action and taken it through the various courts as did the plaintiff Smith. The issuable questions involved were not so simple as was argued by counsel in one of the briefs. If we were determining the matter originally we are frank to say that the amount of the allowance would have been less. However, it must be understood that we are determining this case on review and may not reverse the judgment of the trial court unless so manifestly against the evidence that it may not be permitted to stand.

The judgment of the trial court will be affirmed. The costs of this appeal will be adjudged against the appellants.

GEIGER, PJ. and HORNBECK, J., concur.